**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____

JOHN GERACI, *on behalf of himself and all* :
*others similarly situated*, :
                                        :
                   Plaintiff, :
                                        :     Civil No. 1:18-cv-15542-RMB
      v. :
                                          :         **OPINION**
RED ROBIN INTERNATIONAL, INC., :
                                            :
                   Defendant. :
_____:

**BUMB,** United States District Judge:

       This matter comes before the Court upon motion by Defendant Red Robin International, Inc. ("Defendant") seeking a transfer of venue to the United States District Court for the District of Colorado, pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendant's Motion to Transfer Venue will be granted.

## I.     **<u>PROCEDURAL HISTORY</u>**

       On November 1, 2018, Plaintiff John Geraci ("Plaintiff") filed a putative class action in the United States District Court for District of New Jersey against Red Robin, alleging that "[Red Robin] sent unauthorized telemarketing text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act (the 'TCPA'), 47 U.S.C. § 227(b)(1)(A)." [Complaint, "Compl.," at ¶ 1]. Plaintiff brings this action pursuant Federal Rule of Civil Procedure 23 purportedly on behalf of "[a]ll persons who (1) on or after four years prior to [November 1, 2018] (2) were sent Red Robin Royalty text messages after (3) texting Defendant 'Stop' or (4) where Defendant did not possess prior express written consent." <u>Id</u>. at ¶ 36.

On February 15, 2019, Defendant filed the instant motion, requesting that this action be transferred, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Colorado.[1]

## II.  **FACTUAL BACKGROUND**

Defendant is a Nevada corporation headquartered in Green Village, Colorado [Defendant's Memorandum in Support of Transfer, "Def.'s Memo.," p. 9] that owns and operates over 400 casual dining restaurants in 39 states—13 are located in New Jersey. [Woolen Declaration, at ¶ 13]. In addition, Defendant operates the Red Robin Royalty ("Royalty") Program for its customers that provides them with offers for discounts and other benefits at its restaurants. Id. at ¶ 4. Approximately 97.5% of Royalty Program members live outside of New Jersey. Id. at ¶ 14.

Plaintiff joined the Royalty Program on August 12, 2013 through Defendant's website, at which time he provided his name, address, date of birth, and cellular telephone number. Id. at ¶ 8. A copy of the exact Terms & Conditions ("Terms") that the parties allegedly contracted to, which allegedly contains a clause designating Colorado as venue for any action against Defendant, has not yet been produced. Id. at ¶ 9.[2]

---

[1] In addition, Plaintiff filed a Motion to Leave for Sur-Reply on March 29, 2019. See [Plaintiff's Motion for Sur-Reply]. As the Court will explain in greater detail, Plaintiff's motion is considered moot.

[2] Plaintiff asserts that a produced copy of the Terms does not show a valid forum-selection clause. See [Plaintiff's Motion for Sur-Reply, Plaintiff's Reply Brief in Support of Sur-Reply]. At this stage in litigation, without full discovery, it is unclear if the parties agreed to a valid forum-selection clause, given that the exact Terms Plaintiff and Defendant agreed to have not been produced. Because a standard § 1404(a) analysis weighs in favor of transfer, the Court need not endeavor the task of discerning whether the parties in fact agreed to a valid forum-selection clause. To that end, as the central concern of Plaintiff's Motion for Leave to File Sur-Reply is whether there is a valid forum-selection clause, the Court finds such motion moot.

On May 25, 2018, Defendant sent Plaintiff a promotion through an allegedly automated text message that included "Reply STOP to cancel." [Compl., at ¶ 24]. Plaintiff responded "Stop" and received verification that the text messages would cease. <u>Id</u>. Defendant sent Plaintiff two more allegedly automated text messages containing Red Robin promotions in July and October of 2018. <u>Id</u>. The technology used to communicate with Plaintiff is stored in Colorado, as well as Defendant's information systems. [Woolen Declaration, ¶ 12].

### III.   <u>DISCUSSION</u>

Even if a plaintiff has brought his case in a proper venue, a district court may transfer the case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Transfer under § 1404(a) is permissible only if the transferee district has personal jurisdiction over the defendant. <u>United States v. Berkowitz</u>, 328 F.2d 358, 361 (3rd Cir. 1964) (citing <u>Goldlawr, Inc. v. Heiman</u>, 369 U.S. 463, 466-67 (1962)).

"The burden of establishing the need for transfer … rests with the movant," <u>Jumara v. State Farm Ins.</u>, 55 F.3d 873, 879 (3rd Cir. 1995), and the decision to transfer is within the sound discretion of the district court. <u>Huang v. Sonus Networks, Inc.</u>, No. 15-2407, 2016 U.S. Dist. LEXIS 36009, at *4-5 (D.N.J. Mar. 21, 2016) (citing <u>Gendrikrovs-Bayer v. Bellagio Hotel & Casino</u>, No. 14-6324, 2015 U.S. Dist. LEXIS 64984, at *2 (D.N.J. May 15, 2015)).

This Court has previously set out public and private factors to be considered in weighing whether to transfer venues. <u>Harrison v. Fed. Bureau of Prisons</u>, No. 17-4296, 2018 U.S. Dist. LEXIS 103646, at *6-7 (D.N.J. June 20, 2018). The following is the non-exhaustive list:

> The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court

congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

Private interest factors include: (1) the plaintiff's forum preference; (2) the defendant's forum preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent they may be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that they could not be produced in the alternative forum).

Id. at *6-7 (citing Jumara, 55 F.3d at 879).

IV.  **ANALYSIS**

A.  **Propriety of Venue in the Transferee District**

A civil action may be brought in "[the] judicial district in which any defendant resides." 28 § U.S.C. 1391(b). General jurisdiction exists in the district where the defendant is a corporation or "an equivalent place, one in which the corporation is regarded as at home." Evans v. Catholic Relief Servs., No. 2:18-cv-13537, 2019 U.S. Dist. LEXIS 96589, at *6 (D.N.J. June 10, 2019) (citing Goodyear Dunlop Tires Operations, S.A v. Brown, 564 U.S 915, 924 (2011)). Defendant contends that "the parties cannot dispute that [Plaintiff] might have brought this case in the District of Colorado" [Def.'s Memo., p. 3] and it appears Plaintiff does not argue otherwise. Defendant is headquartered in Colorado, thus, venue is proper in the District of Colorado. See Evans, 2019 U.S. Dist. 96589, at *7; Hertz Co. v. Friend, 559 U.S. 77, 92-93 (2010).

B.  **Propriety of Transfer to Transferee District**

The location of the Defendant, resources, and witnesses around Colorado and the spread of the Plaintiff-class throughout the country tilt the majority of the factors in favor of transfer.

a.  **Public Interests Weigh in Favor of Transfer**

The relevant public interests weigh in favor of transferring this case to the District of Colorado.[3] Defendant argues that it is more practical to litigate in the District of Colorado because it and a significant number of records, witnesses, and technology reside in Colorado. [Def.'s Memo., p. 18]. Plaintiff argues that Defendant's relative financial position makes it less burdensome for Defendant and its witnesses to travel to New Jersey than for Plaintiff to travel to Colorado. [Plaintiff's Memorandum in Opposition of Transfer, "Pl.'s Memo.," p. 14]. While Plaintiff may not be as well-positioned to travel as Defendant, Defendant and the vast majority of putative class members, likely to be scattered throughout the country, would be required to travel substantial distances to New Jersey. See [Woolen Declaration, p. 14] ("Approximately 97.5% of customers enrolled in the [Royalty] program live outside of New Jersey."). In contrast, Defendant and many witnesses and records reside in Colorado and would be required to travel substantial distances only to New Jersey. See Smith v. HireRight Sols., Inc., No. 09-6007, 2010 U.S. Dist. LEXIS 55477, at *29-30 (E.D. Pa. June 7, 2010) (finding Oklahoma, transferee district, a more practical venue than Pennsylvania because defendant's employees and documents are located in Oklahoma). In other words, more people and resources likely reside in Colorado than in New Jersey. Accordingly, this factor weighs in favor of transfer.

Next, Defendant argues that this case should be transferred because the District of Colorado has a shorter median time from filing an action to trial than the District of New Jersey. [Def.'s Memo., p. 19]. Plaintiff offers no counterarguments. Indeed, in reality, Plaintiff would be

---

[3] Public factors one, five, and six do not weigh in either direction. With regard to factor one, this is a matter of federal law and federal judges in Colorado and New Jersey could both interpret the law without issue. The parties' arguments regarding factor five concern whether a valid forum-selection clause exists, but as the Court has explained, that issue cannot be decided on the current record. Factor six is irrelevant to this analysis because this is not a diversity case.

hard-pressed to diverge with Defendant: the Judicial Conference of the United States has

declared every judicial vacancy existing in District of New Jersey, of which there are 6 out of 17

authorized judgeships, as a "judicial emergency." Defendant is correct in that this Court has a

greater per-Judge caseload than the transferee court,[4] thus, this factor weighs in favor transfer.

Defendant then argues that this case should be transferred because Colorado has a

significant local interest in adjudicating the claims, particularly "to ensure that businesses located

in [Colorado] abide by federal laws and do not engage in unlawful telemarketing practices."

[Def.'s Memo., p. 19] (citing Sias v. Law Offices of Andreu, Palma & Andreu, PL, No. 10-3773,

2011 U.S. Dist. LEXIS 10085, at *14-15 (D.N.J. Feb. 2, 2011)). In response, Plaintiff argues that

New Jersey has a significant local interest in protecting its citizens from out-of-state corporations

and, relying on Montich v. Miele USA, Inc., that New Jersey's interest is greater than Colorado's

because the claim arose in New Jersey and because Plaintiff has numerous contacts with New

Jersey. [Pl.'s Memo., p. 14]; 849 F. Supp. 2d 439, 448-449 (D.N.J. 2012). Montich is

distinguishable, however, because it dealt with a choice-of-law issue and it is unclear if

Montich's reasoning applies to transfer-of-venue cases. Id. at 444. At any rate, Colorado has a

more compelling local interest in adjudicating this case than New Jersey. This is a case about a

company headquartered in Colorado allegedly harming citizens throughout the nation by using

technology in Colorado to effect marketing decisions made in Colorado. As such, this factor

weighs in favor of transfer.

### b. Private Interests Weigh in Favor of Transfer

---

[4] From March 2018 to March 2019, 17 judges presided over approximately 25,000 filings in the District of New Jersey, while 7 judges presided over 4,300 filings in the District of Colorado. See Statistics as of March 2019, National Judicial Caseload Profile (available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2019.pdf).

The relevant private interests weigh in favor of transferring this case to the District of Colorado. With regard to factor one, Defendant argues that Plaintiff's choice of forum is diminished in consequence because he represents a putative class action with thousands of putative class members scattered across the country. See [Compl., ¶ 37]; Huang, 2016 U.S. Dist. LEXIS 36009, at *6-7. In response, Plaintiff argues that his choice of forum should still be given "great weight" because (1) the rationale that a plaintiff's choice of forum should be afforded less weight in a class action does not apply when the plaintiff's choice of forum is his home state and the dangers of forum shopping are absent, (2) a named plaintiff could more aggressively pursue the class' claims in his preferred state, and (3) New Jersey is the proper venue considering Plaintiff and Defendant both have substantial contacts with New Jersey, and some of the operative facts took place in New Jersey. [Pl.'s Memo., p. 10].

Plaintiff's first and second arguments rest on the premise that a class representative's forum should be afforded great weight because it is his preferred, and home, forum. First, in Job Haines Home for the Aged v. Young, Judge Chesler held that "the weight of authority holds in class actions [that] the representative's choice of forum is entitled to little deference." 936 F. Supp. 223, 228 (D.N.J. 1996) (citing Koster v. Lumbermans Mut. Cas. Co., 330 U.S. 518, 524 (1947)). Even assuming that Plaintiff is not forum shopping by the fact that his choice of forum is his home state, the putative class is present throughout the nation and "[t]he residence of the class representative becomes a mere happenstance." Young, 936 F. Supp. at 228.

Second, Plaintiff relies on AL & PO Corp. v. Am. Healthcare Capital, Inc. for the idea that "unnamed class members presumably benefit from a class representative who is able to aggressively litigate their claims without significant inconvenience due to travel." [Pl.'s Memo., p. 10]; No. 14-1905, 2015 U.S. Dist. LEXIS 19922, at *3 (N.D. Ill. Feb. 9, 2015). The court in

AL & PO Corp declined to adopt the majority approach,[5] that a class representative's choice of

forum is given less weight than in an individual action, because it did not want to assume that the

class certification would ultimately be granted, and because the class representative could more

aggressively pursue the class' claims in his preferred forum. Id. at *6-7. This appears to be the

minority approach. See 1 McLaughlin on Class Actions § 2.46 (15th ed.) (collecting cases) ("[I]f

the members of the proposed class reside in numerous states, the traditional deference accorded

to plaintiff's forum selection ordinarily is greatly diminished. A minority view holds that the

general rule of deference continues to apply where no class has yet been certified.").[6] In fact, it

appears that even courts within the Northern District of Illinois, the district in which the minority

view has developed, are not in agreement. See Carter v. Arise Virtual Sols., Inc., No. 16-6262,

2017 U.S. Dist. LEXIS 7007, at *5 (N.D. Ill. Jan. 18, 2017) ("Some courts in this district have

adopted the [majority view], while others have hesitated to do so[.]").

Courts within the Third Circuit follow the majority view that less deference is generally

afforded to the class representative's choice of forum,[7] but have considered a number of

---

[5] See 2 Newberg on Class Actions § 6:38 (5th ed.) (collecting cases) ("In class actions, the plaintiff's choice of forum is generally given less weight.").

[6] The Supreme Court in Koster stated "where there are hundreds of potential plaintiffs … the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." 330 U.S. at 524. While Koster involved a derivative action, district courts generally, as well as district courts within the Third Circuit, have applied Koster's reasoning to class actions. Id. at 519; see Smith, 2010 U.S. Dist. LEXIS 55477, at *3; Abramson v. CWS Apt. Homes, LLC, 2016 U.S. Dist. LEXIS 154606, at *5-6 (W.D. Pa. Nov. 8, 2016); Impervious Paint Indus., Ltd. v. Ashland Oil, Inc., 444 F. Supp. 465, 467 (E.D. Pa. 1978); Hall v. Kittay, 396 F. Supp. 261, 263 (D. Del. 1975).

[7] The Second and Ninth Circuits have also endorsed the majority view. See In re Warrick, 70 F.3d 736, 741 n.7 (2nd Cir. 1995) (adopting majority view but affording greater deference to plaintiff's choice of forum because it was reasonable to assume a disproportionate amount of the putative class resided in plaintiff's chosen forum); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) (adopting majority view).

principles to decide whether to adhere to the majority view. This Court declines to adopt the minority view and will evaluate the considerations enumerated by majority view-adopting courts.

One consideration, which Plaintiff argues necessitates a finding of greater deference, is the participation of the class representative in his preferred forum. [Pl.'s Memo., p. 10]. Courts following the majority view have looked to whether a class representative had made a showing that he would be required to "participate extensively" at trial or be required to attend trial, not merely whether he could more aggressively pursue his class' claims. Impervious, 444 F. Supp. at 467 (citing Goodman v. Fleischmann, 364 F. Supp. 1172 (E.D. Pa. 1973)); see also General Refractories Co. v. Washington Mills Electro Minerals Corp., No. 94-6332, 1995 U.S. Dist. LEXIS 8351, at *8 (E.D. Pa. June 16, 1995) (finding named plaintiff's potential participation at trial "minimal" where the conduct forming the basis for the complaint was allegedly performed by the defendants, and named plaintiff made no showing to the contrary). Here, Plaintiff has made no showing that his presence would be required at trial or that he would need participate extensively in the same.

In addition, where the bulk of evidence will likely come from the defendant, testimonial or documentary, or where a class representative's testimony is likely identical to that of his class members', a plaintiff's choice of forum is entitled to less consideration. General Refractories Co., 1995 U.S. Dist. LEXIS 8351, at *6-8 (citing In re All Terrain Vehicles Litig., No. 88-237, 1989 U.S. Dist. LEXIS 1843, at *3 (E.D. Pa. Feb. 23, 1989)). Plaintiff has made no showing that his testimony would be any different than his class members, and it appears that the critical evidence in this case will likely come primarily from Defendant's headquarters in Colorado. See [Woolen Declaration, ¶ 12].

Courts have also looked to the location of class members, not the class representative, with respect to the two fora. In nationwide class actions, as here, a more centrally located forum would help class member participation. <u>Impervious</u>, 444 F. Supp. at 467-68; <u>Harris v. Am. Inv. Co.</u>, 333. F. Supp. 324, 326-27 (E.D. Pa. 1971) (transferring case from the Eastern District of Pennsylvania to the Eastern District of Missouri because potential expenses of the nationwide class litigating in Pennsylvania outweigh potential expenses of class representative litigating in Missouri); <u>see also</u> <u>Johnson v. Nextel Communs., Inc.</u>, No. 06-cv-5547, 2007 U.S. Dist. LEXIS 70926, at *12 (finding less deference where "[p]laintiffs constitute only six of 587[-person class action.])" Indeed, Colorado is a more centrally located venue than New Jersey, where approximately only 2.5% of Royalty Program members live [Woolen Declaration, ¶ 14]— Colorado would likely be the less expensive venue for the putative nationwide class.

Third, Plaintiff argues that his choice of forum should be given deference because the operative facts occurred in New Jersey, and because he and Defendant have substantial contacts with the State. [Pl.'s Memo., p. 10]. As support, Plaintiff argues that he received the alleged automated messages in New Jersey, he is a resident of New Jersey, and that Red Robin has substantial contacts with New Jersey because it owns and operates 13 restaurants within the State. <u>Id</u>. However, each putative class member who resides in one of the 39 states that Defendant owns and operates restaurants likely received the alleged automated messages in those states and would have similar contacts with those states as New Jersey. [Woolen Declaration, ¶ 13]. On the other hand, the operative facts arose in, and Defendant and the Plaintiff-class have substantially more contacts with, Colorado, which is where Defendant is headquartered, where Defendant made the marketing decisions to send the alleged automated messages, and where the technology was used to communicate with Royalty Program members. <u>Id</u>. at ¶¶ 10-12. Thus, it

appears the operative facts to this case occurred in Colorado. See Smith, 2010 U.S. Dist. LEXIS 55477, at *12-13 (finding the operative facts arose in Oklahoma where the challenged consumer reports originated from Oklahoma even though the plaintiff felt their effects in Pennsylvania).

Indeed, "[p]laintiff's choice of forum [] is not a right and 'should not receive dispositive weight.'" Ki-The Kim v. BMW of N. Am., LLC, No. 2:12-cv-02917, 2013 U.S. Dist. LEXIS 23950, at *10 (D.N.J. Feb. 20, 2013) (quoting Jumara, 55 F.3d at 880). Where, as here, the "vast majority of factors weigh[] in favor of transfer," affording Plaintiff's choice of forum the standard weight would not prove tantamount to a denial of transfer. See Puritan-Bennett Corp. v. G. P. Indus., Inc., No. 87-2099-S, 1987 U.S. Dist. LEXIS 7027, at *8-9 (D. Kan. July 24, 1987). After review of all relevant considerations, the Court affords Plaintiff's choice of forum less deference, and, as such, finds that it should not preclude the transfer of this case.

Next, Defendant argues that its choice of forum should weigh in favor of transfer because it is choosing to litigate in its home forum and, at the very least, its preference to litigate in Colorado should offset Plaintiff's preference to litigate in New Jersey. [Def.'s Memo., p. 22]. Plaintiff, however, offers no counterargument. As mentioned previously and below, not only is Colorado the home to Defendant, but many of the operative facts arise from within Colorado. This factor weighs in favor of transfer.[8]

With regard to the third factor, Defendant argues that the operative facts resulting in this lawsuit—the decision to implement and market the Royalty Program and the means by which it sent the alleged automated messages—originated in Colorado, not New Jersey. [Defendant's

---

[8] See also Virag, S.R.L. v. Sony Comp. Entm't Am. LLC, No. 14-4786, 2015 U.S. Dist. LEXIS 39910, at *16 (D.N.J. Mar. 30, 2015) ("[T]he Court finds that because less deference is afforded to [p]laintiff's choice of forum, [d]efendant's choice of forum should be given more weight.") (quoting N. Am. Dental Wholesalers, Inc. v. Danaher Corp., No. 11-247, 2011 U.S. Dist. LEXIS 91140, at *5 (E.D. Pa. Aug. 15, 2011)).

Reply Brief in Support of Transfer, "Def.'s Reply," p. 10]. Plaintiff argues that the claim arose in New Jersey because the messages were received in New Jersey, which are more substantial in this context than the place in which decisions were made. [Pl.'s Memo., p. 11]. Because the putative class members allegedly suffered injury "throughout the United States" [Compl. at ¶ 38], however, this matter's "center of gravity" revolves around Colorado, not New Jersey. Santomenno v. Transamerica Life Ins. Co., No. 11-736, 2012 U.S. Dist. 44883, at *23–25 (D.N.J. Mar. 30, 2012). This factor also weighs in favor of transfer.

The parties also dispute whether the relative financial and physical condition of Defendant should favor or disfavor transfer. See [Def.'s Memo, Pl.'s Memo]. As representative of a putative class action, Plaintiff will likely play only a minimal role in litigation, if any at all. See Santomenno, 2012 U.S. Dist. 44883, at *20 (citing Young, 936 F. Supp. at 228, 231). On the other hand, Defendant will most likely spend significant resources defending this suit. To the extent that Defendant will be the only entity or individual spending significant resources, its relative financial and physical size does not weigh in either direction. As such, this factor is neutral.

Factors five and six—the convenience of witnesses, books, and records to the extent that they would be unavailable for trial—are neutral, respectively. Defendant argues that its employees and records will have to travel over a thousand miles to testify in New Jersey, while Plaintiff argues that Defendant has not made a showing which particular witnesses and records will be inconvenienced. See [Pl.'s Memo., Def.'s Reply]. Because neither party has offered evidence that its witnesses and records would be unavailable for trial, and not merely inconvenienced, these factors are neutral. See Franklin U.S. Rising Dividends Fund v. Am. Int'l Group, Inc., No. 2:13-05805, 2014 U.S. Dist. LEXIS 50925, at *28-29 (D.N.J. Apr. 14, 2014)

(citing <u>Days Inn Worldwide, Inc. v. Ram Lodging, LLC</u>, No. 09-2275, 2010 U.S. Dist. LEXIS 37790, at *18 (D.N.J. Apr. 14, 2010)).

V.    **<u>CONCLUSION</u>**

For the above-stated reasons, Defendant's Motion to Transfer Venue will be granted. An appropriate order follows.

Date: June 21, 2019                        <u>s/ Renée Marie Bumb</u>
                                           RENÉE MARIE BUMB
                                           UNITED STATES DISTRICT COURT